# United States District Court
# District of Massachusetts

FALAFEL REPUBLIC MEDITERRANEAN
    FOODS, INC.*,*
        Plaintiff,

   v.                              CIVIL ACTION NO. 12-10551-NMG

TARAZI SPECIALTY FOODS, INC.,
        Defendant.

# *REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO TRANSFER THIS ACTION TO THE UNITED STATES DISTRICT COURT,* <u>*CENTRAL DISTRICT OF CALIFORNIA (#6)*</u>

COLLINGS, U.S.M.J.

## *I. Introduction*

On March 5, 2012, plaintiff Falafel Republic Mediterranean Foods, Inc.

("FRMF") filed a three-count complaint in the Superior Court for Plymouth

County, Commonwealth of Massachusetts, against defendant Tarazi Specialty

Foods, Inc. ("Tarazi") seeking declaratory judgments to the effect that FRMF is not liable to Tarazi under Purchase Order #163 (the "Purchase Order") (Count I) and that it is not liable for the debts of the Original Rangoon Company ("ORC") (Count II), as well as a claim under Massachusetts General Laws chapter 93A, alleging that Tarazi engaged in unfair, deceptive acts and practices (Count III). (#11, Ex. A at ¶¶ 26-36)  On March 23, 2012, Tarazi filed a six-count complaint in the United States District Court for the Central District of California, Eastern Division, naming both FRMF and its sole shareholder and officer, Gregory Bukuras ("Mr. Bukuras"), as defendants[1].  (#9-1, Def.'s Req. for Judicial Notice in Supp. of Mot. to Transfer, Ex. A )[2]  The complaint alleges breach of contract against FRMF and Mr. Bukuras for ORC's debt (Count I); breach of contract against FRMF on the Purchase Order (Count II); breach of guarantee against Mr. Bukuras (Count III); fraud against FRMF and Mr. Bukuras for representing to Tarazi that FRMF and Mr. Bukuras would repay ORC's debts (Count IV); fraud against Mr. Bukuras for misrepresenting why he wanted Tarazi's ingredient list (Count V); and violation of the Uniform Trade

---

[1]

In addition to FRMF and Mr. Bukuras, Tarazi also names Does 1-10 as defendants.

[2]

The case is docketed as *Tarazi Specialty Foods Incorporated v. Falafel Republic Mediterranean Foods, Inc.*, CV 12-02529.  (#9-1, Ex. A at 1)

Secrets Act against Mr. Bukuras for his use of Tarazi's proprietary blend of spices (Count VI). (#9-1, Ex. A at 6-12)

On March 26, 2012, Tarazi removed the instant action to the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. § 1441(a). (#1, Notice of Removal ¶ 1)  On April 2, 2012, Tarazi filed a motion to transfer the action to the United States District Court for the Central District of California  (#6), accompanied by a memorandum in support, a declaration with exhibits, and a request for judicial notice. (#7; #8; #9-1)    FRMF submitted an opposition (#12) on April 30, 2012, along with a declaration in opposition (#13).  With leave having been granted, Tarazi filed a reply with an appended affidavit and exhibits (#15) on May 15, 2012.

On June 25, 2012, a hearing was held on the motion to transfer.  During the course of that hearing, FRMF was asked to file a brief on the issue of whether the conduct forming the basis of its 93A claim against Tarazi occurred primarily and substantially in Massachusetts; the brief (#18) was filed on July 9, 2012.   Ten days later, Tarazi filed its supplemental memorandum in response (#19).  At this juncture, Tarazi's motion to transfer stands ready for decision.

## II. The Facts[3]

### A. The Background

The disputes in this case arise out of a business relationship turned sour, and center around certain debts that Tarazi alleges FRMF owes and the duties and behavior of the parties surrounding the Purchase Order.  Plaintiff FRMF is a Massachusetts corporation with its principal place of business in Rockland, Massachusetts. (#11, Ex. A ¶ 1)  FRMF's chief executive officer is Greg Bukuras ("Mr. Bukuras").  (#11, Ex. A ¶ 5)  Defendant Tarazi is a California corporation with its principal place of business in Chino, California. (#11, Ex. A ¶ 2)  Nabil Huleis ("Mr. Huleis") and Christine Huleis ("Ms. Huleis") are officers and owners of Tarazi.  (#11, Ex. A ¶ 2)

Prior to the formation of FRMF, Mr. Bukuras owned and operated the Original Rangoon Company, Inc. ("ORC"), a Massachusetts corporation that produced frozen appetizers to sell to grocery stores throughout the nation. (#11, Ex. A ¶ 5)  Beginning in 2010, Tarazi started to supply raw material falafel mix to ORC, which ORC then sold under the brand name "Falafel Republic." (#11, Ex. A ¶ 6; #9-1, Ex. A ¶ 8)  There was no formal agreement

---

[3]

All facts are taken from FRMF's complaint as well as the documentation submitted by both parties in support of their respective positions.

governing their relationship, but the practice was that ORC would send Tarazi a purchase order, Tarazi would manufacture the order, then ORC would send payment and arrange to pick up the mix.[4] (#8, Huleis Decl. ¶¶ 3(a)-(c); #9-1, Ex. A ¶¶ 8(a)-(c))  In June 2010, ORC began to develop its own falafel mix recipe, and in January 2011 it informed Tarazi that it had succeeded.  (#13, Decl. of Gregory Bukuras ¶¶ 11-12)

Around May 2011, Mr. Bukuras informed Ms. Huleis that he wanted his orders to be put in bags bearing the Falafel Republic logo.  (#8 ¶ 6; #9-1 ¶ 12)  Ms. Huleis arranged for the design and manufacture of 11,575 bags bearing the Falafel Republic logo, costing a total of $5,030. (#8 ¶ 8; #9-1 ¶ 12)  It was understood that ORC would pay for the bags.  (#8 ¶ 7; #9-1 ¶ 12)   Tarazi began bagging ORC's (and subsequently FRMF's) orders in the bags; ORC never paid for the bags. (#11, Ex. A, Ex. 7 at 2; #8 ¶ 8)  ORC ordered 120,000 pounds of falafel mix between May and July of 2011, and paid for 50,000 pounds.  (#8 ¶ 9; #9-1 ¶¶ 13-19)  The 70,000 pounds of unpaid falafel mix

---

[4] FRMF asserts that the falafel mix was shipped directly to ORC and later FRMF.  (#12  at 5)  Tarazi maintains that ORC and FRMF always arranged for pickup, and supports this assertion with a declaration from Ms. Huleis (#8, Huleis Decl. ¶¶ 2-4, 18-21) and a copy of the Purchase Order, which states "FALAFEL MIX TO BE PUT UP FOR INVENTORY FALAFEL REPUBLIC WILL PULL." (#8-2, Ex. B ("Purchase Order"))  Tarazi notes that "will pull" is an industry term meaning the buyer will "make arrangements for pick up and hauling." (#19 at 4).

was worth $117,600. (#8 ¶ 9; #9-1 ¶ 19)

In May 2011, ORC experienced severe financial trouble, and ORC's secured lender demanded immediate repayment of all loans. (#11, Ex. A ¶ 8) ORC's attempts to sell its business or gain investors failed, and it eventually decided to shutdown, liquidate remaining assets, and pay its creditors through an assignment for benefit of creditors. (#11, Ex. A ¶¶ 9-11)  On August 5, 2011, ORC formed a trust and transferred all of its assets to Craig Jalbert ("Mr. Jalbert"), who was designated as the assignee for the benefit of ORC's creditors. (#11, Ex. A ¶ 12)  In order to receive payment, a creditor was required to file a proof of claim. (#11, Ex. A ¶ 13)  ORC owed Tarazi approximately $120,000, but Tarazi never filed a proof of claim to collect the debt.[5] (#11, Ex. A ¶¶ 13-14)  FRMF claims that Tarazi's failure to file a claim waived its right to collect its debt. (#11, Ex. A ¶ 14)

FRMF, Mr. Bukuras' new company,[6] purchased the trademarks, recipes, and other intellectual property rights related to ORC's falafel product. (#11,

---

[5]

Ms. Huleis asserts that Mr. Bukuras flew to California on August 6th to meet with her and her father, Mr. Huleis. (#8 ¶ 12; #9-1 ¶ 21)  At this meeting, Mr. Bukuras is alleged to have verbally assured Ms. Huleis and Mr. Huleis that he and FRMF would pay Tarazi all of ORC's outstanding debt. (#8 ¶ 12; #9-1 ¶ 21)

[6]

It is unclear when this company formed.  Ms. Huleis states that around July 27, 2011, Mr. Bukuras informed her that ORC was "going bankrupt" and "that he would be purchasing the Falafel Republic brand through his new company, [FRMF], which would continue on with Tarazi in the same manner as ORC."  (#8 ¶ 10; #1-2 ¶¶ 15-16)

Ex. A ¶ 15)  FRMF asserts that the purchase agreement stated that FRMF did

not assume[7] ORC's debts and disclaimed any liability for ORC's outstanding

obligations. (#11, Ex. A ¶ 15)  In August 2011, FRMF began marketing its

falafel product. (#11, Ex. A ¶ 16)  FRMF has a "small office" in Massachusetts,

"consisting of just two employees responsible for marketing the product."

(#11, Ex. A ¶ 16)

## B. The Guarantee

At a meeting in California on August 6, 2011, after the assignment for the

benefit of creditors and the acquisition of the FRMF trade name, Mr. Bukuras

expressed his desire to continue using Tarazi as a supplier; Ms. Huleis and Mr.

Huleis agreed to use the same credit terms that had been extended to ORC.

(#13 ¶ 20)  According to Ms. Huleis,

> After considering Bukuras's proposal [that Tarazi
> continue doing business with FRMF], we decided that
> Tarazi would agree to supply falafel mix to Bukuras
> and FRMF on two conditions: (1) FRMF agreed to pay
> Tarazi the outstanding $122,630 due and owing for
> previously manufactured product; and (2) Bukuras
> signed a personal guarantee, guaranteeing FRMF's
> debt, both present and future.

---

[7]

There appears to be a typographical error in the complaint, as the allegation reads: "As part of that transaction, [FRMF] did assume (sic) any of ORC's obligations to Tarazi and expressly disclaimed any responsibility for such liabilities in its asset purchase agreement with the Assignee." (#11, Ex. A ¶ 15)

#8 ¶ 13.

In any event, it is undisputed that after this meeting, Mr. Bukuras agreed personally to guarantee FRMF's future debt as a condition to the credit extension; Tarazi's counsel drafted a guarantee (the "Guarantee"), which Mr. Bukuras signed on August 23, 2011.[8] (#13 ¶¶ 21-22; #8 ¶¶ 14-15 and Ex. A 6)

> The Guarantee states:
>
> > Guarantor hereby guarantees, absolutely, primarily, and irrevocably, payment and performance of all amounts now or hereafter owing by Borrower to Tarazi, including arising from any and all advances, debts[,] obligations and liabilities of Borrower [FRMF] now existing or hereafter made, incurred or created (collectively, the "Obligations").

#8, Ex. A ¶ 3.

The Guarantee's choice of law provision states that the "Guarantee and the rights and obligations of the parties hereunder shall be governed by and interpreted in accordance with the internal laws of the State of California, without regard to conflict of law principles." (#8, Ex. A ¶ 17)  The forum-selection clause states:

---

[8]

Ms. Huleis declares that attorneys on both sides negotiated the terms before the final Guarantee was executed. (#8 ¶ 14)  Mr. Bukuras asserts that the Guarantee was signed without modification. (#13 ¶ 22)

> Guarantor hereby submits to the jurisdiction and venue of any federal court located in the State of California or any state court located in Los Angeles County, California, in connection with any action or proceeding brought for the enforcement of Guarantor' (sic) obligations hereunder, and hereby waives any and all personal or other rights under the law of any other country or state to object to jurisdiction within such locations for purposes of litigation to enforce such obligations.   Guarantor agrees that service of process upon Guarantor shall be complete upon delivery thereof in any manner permitted by law.

#8, Ex. A ¶ 10.

## C. The Purchase Order

On October 7, 2011, FRMF sent Tarazi a purchase order for 40,000 pounds of falafel mix, which was to be divided into two separate shipments of 20,000 pounds each, dates to be determined. (#11, Ex. A ¶ 17)  FRMF alleges that Tarazi knew that it was FRMF's sole supplier of falafel mix and, without its supply, FRMF would be unable to fulfill customer orders. (#11, Ex. A ¶ 18)  On October 19, 2011, Tarazi rejected the Purchase Order conditioning further shipments on FRMF's agreement to pay Tarazi $10,000 per month to pay off ORC's $120,000 debt. (#11, Ex. A ¶ 19)  After some discussion between Mr. Bukuras and Mr. Huleis, Tarazi agreed to sell FRMF 20,000 pounds of falafel mix, for which FRMF paid. (#11, Ex. A ¶¶ 20-22)  One day after providing the

falafel mix to FRMF's shipper, Tarazi's counsel sent an email to FRMF stating Tarazi was "unwilling to ship anything else" unless FRMF entered into an agreement to pay ORC's debt. (#11, Ex. A ¶ 23)   FRMF refused, and in response to Tarazi's repudiation of the Purchase Order, FRMF purchased 20,000 pounds of falafel mix from another supplier in order to fulfill its needs. (#11, Ex. A ¶ 24)

During November and December 2011, Ms. Huleis insisted that FRMF purchase the additional 20,000 pounds of mix that Tarazi had manufactured but had refused to supply on October 25th, and that FRMF pay for the bags that Tarazi had secured on behalf of ORC. (#13 ¶ 28)  The discussions proved futile, and in December 2011 Mr. Bukuras told Ms. Huleis that he would purchase the falafel mix at the same price he was paying his new vendor, and that FRMF would "purchase the bags once [FRMF] was on its feet financially." (#13 ¶ 29)

## D. The Demand Letter

On February 12, 2012, FRMF received Tarazi's demand letter, which alleged that FRMF was in breach of its obligations to take possession of and pay for the second shipment of falafel pursuant to the Purchase Order, worth approximately $33,600, and that FRMF owed Tarazi $5,030 for the paper bags

bearing the Falafel Republic logo. (#11, Ex. A ¶ 25 and Ex. 7 at 1-3)  The letter demanded immediate payment of $38,630.  (#11, Ex. A,  Ex. 7 at 3)  The letter also alleged misappropriation of trade secrets with regard to FRMF's use of Tarazi's proprietary blend of falafel spices to reverse engineer a similar grain. (#11, Ex. A, Ex. 7 at 2)  Tarazi demanded that FRMF cease and desist from using the blend and from selling products produced using the blend.  (#11, Ex. A, Ex. 7 at 2-3)

In addition, the demand letter advised that Tarazi was "looking to both [Mr. Bukuras] personally, and [FRMF] to recover its losses resulting from Falafel Republic's failure to pay fair market value for ORC's assets." (#11, Ex. A, Ex. 7 at 3)  It further asserted that Mr. Bukuras had committed a fraud on ORC's creditors, including Tarazi, by purchasing ORC below fair market value. (#11, Ex. A, Ex. 7 at 2)  In the closing paragraph, Tarazi warned that FRMF's "failure to comply with the above demands will leave Tarazi no other choice than to pursue its legal rights and remedies . . . ."  (#11, Ex. A, Ex. 7 at 3)

Mr. Bukuras responded to Tarazi's letter via email three days later, stating: "I acknowledge receipt of your correspondence . . . which I have forwarded to my attorney, with whom I expect to meet next week." (#15, Declaration of Alan M. Dettelbach, Ex. B, Feb. 15, 2012 Email)  On March 1,

- 11 -

2012, Mr. Bukuras sent another email to Tarazi's counsel that stated Mr. Bukuras had met with his lawyer, who "promised a response by the end of this week." (#15, Declaration of Alan M. Dettelbach, Ex. C,  Mar. 1, 2012 Email)

On Monday, March 5th, Mr. Bukuras' attorney notified Tarazi's counsel that FMRF had filed a complaint that morning "seeking declaratory relief with respect to certain claims made by your client." (#15, Declaration of Alan M. Dettelbach, Ex. C, Mar. 5, 2012 Email)  Mr. Bukuras states he believed that after receiving the demand letter, any "additional negotiation with [Tarazi] would be futile" and therefore did not "engage in any further settlement discussions with Tarazi or its counsel." (#13 ¶ 31)

### III.  Legal Standard

Tarazi seeks to have this case transferred to the United States District Court for the Central District of California.  As a threshold matter, this diversity action could have been brought in California since Tarazi, the sole defendant, is a California corporation with its principal place of business in Chino, San Bernardino County, California. *See* 28 U.S.C. § 1391(b)(1) (A plaintiff may file a diversity action in a federal court sitting in "(1) a judicial district in which any defendant resides....").

Title 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties

and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  As explained by the First Circuit:

> Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an "'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S. Ct. 2239, 101 L.Ed.2d 22 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S. Ct. 805, 11 L. Ed.2d 945 (1964))....We review a 'district court's decision on transfer of venue for an abuse of discretion.' *Coady v. Ashcraft & Gerel*, 223 F.3d 1, 11 (1st Cir. 2000)*; Cianbro Corp. v. Curran-Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir. 1987).  Not only does the burden of proof rest with the party seeking to transfer; there is a 'strong presumption in favor of the plaintiff's choice of forum.' *Coady*, 223 F.3d at 11.

*Astro-Med, Inc. v. Nihon Kohden America, Inc.*,  591 F.3d 1, 12-13 (1 Cir., 2009).

When a court is faced with two identical actions pending in different federal courts, "'the first filed action is generally preferred in a choice-of-venue decision.'" *Coady v. Ashcraft & Gerel*, 223 F.3d 1, 11 (1 Cir., 2000) (quoting *Cianbro Corp. v. Curran–Lavoie, Inc.*, 814 F.2d 7, 11 (1 Cir., 1987)); *National Union Fire Ins. Co. of Pittsburgh, PA v. Mead Johnson & Co.*, 2011 WL

6148656, **8, 10 (D. Mass., Oct. 5, 2011); *World Energy Alternatives, LLC v. Settlemyre Industries, Inc.*, 671 F. Supp.2d 215, 218 (D. Mass., 2009)("[w]here *identical* actions are proceeding concurrently in two federal courts, the first filed action is generally preferred, even if it is a request for a declaratory judgment." (internal quotation marks and citation omitted))[9]. There are two exceptions to the first-filed rule:  where (1) "special circumstances" justify a transfer, or (2) the "balance of convenience substantially favors the second-filed action."  *TransCanada Power Mktg., Ltd. v. Narragansett Elec. Co.*, 402 F. Supp.2d 343, 347 (D. Mass., 2005)(citations omitted); *Biolitec, Inc. v. AngioDynamics, Inc.,* 581 F. Supp.2d 152, 158 (D. Mass., 2008).

---

[9]

There is no argument advanced here that the two actions are not identical, i.e., that "'the two actions do not arise from the 'same common nucleus of operative facts.'" *World Energy Alternative*, 671 F. Supp.2d at 218.  All of FRMF's claims involve the same parties and set of operable facts as the California claims and are identical for first-filed purposes. *See Veryfine Products, Inc. v. Phlo Corp.*, 124 F. Supp.2d 16, 18, 22-24 (D. Mass., 2000)(treating two lawsuits with same parties as identical for application of the first-filed rule where the second-filed action involved the party's "own claims brought on substantially the same facts").

### IV.  Discussion

## A.  Application of the First-Filed Rule

Since FRMF was the first to file, its choice of venue is presumptively favored. *See Astro-Med, Inc.*, 591 F.3d at 13.  The Court will find the presumption overcome only if special circumstances exist or the defendant shows that the Central District of California is substantially more convenient. *See Transcanada*, 402 F. Supp.2d at 347.  Special circumstances rebut the first-filed presumption "'where a party has won the race to the courthouse by misleading his opponent into staying his hand in anticipation of negotiation [,] or by reacting to notice of imminent filing by literally sprinting to the courthouse the same day.'" *Id.* at 348 (quoting *Veryfine Products, Inc. v. Phlo Corp.*, 124 F. Supp.2d 16, 22 (D. Mass., 2000)).  In such situations, the plaintiff's "first-filed suit is clearly motivated by the plaintiff's desire to secure the best forum and deference to a later-filed action may be appropriate." *Holmes Group, Inc. v. Hamilton Beach/Proctor Silex, Inc.*, 249 F. Supp.2d 12, 16 (D. Mass., 2002)(citations omitted).

FRMF argues that *Holmes Group* is controlling because it "closely resembles" the facts of this case. (#12 at 10)  In *Holmes Group*, after the plaintiff received a letter from the defendant essentially alleging patent

- 15 -

infringement, the plaintiff responded two weeks later with a letter denying infringement. 249 F. Supp.2d at 14.  Approximately one month after receipt of the defendant's letter, the plaintiff filed a declaratory judgment action seeking a determination that its product did not infringe the defendant's patent. *Id.* The defendant subsequently filed an action in a different court alleging, *inter alia*, patent infringement, and then filed a motion to transfer the plaintiff's action. *Id.*  The Court held that no special circumstances existed because (1) the plaintiff "did not misrepresent its intention to negotiate;" (2) it did not "'sprint[] to the courthouse the same day'"" that it received the cease and desist letter; and (3) there were no ongoing negotiations upon which the defendant had relied in not filing suit. *Id.* at 16-17 (internal citation omitted).  The defendant in *Holmes Group* thus had no reason to anticipate resolution without litigation because the plaintiff responded to the cease and desist letter with a clear denial of liability and "made no promise or implication that it would enter into negotiations."  *Id.* at 16.

In contrast, FRMF never responded to Tarazi's letter with a denial or acceptance of liability; instead Mr. Bukuras twice assured Tarazi's counsel that FRMF's attorney would respond to the letter, thereby implying it would enter into negotiations or, at the very least, take a position on liability.  FRMF

focuses on the fact that the plaintiff waited approximately one month after receiving the defendant's letter to file suit, the exact amount time the plaintiff waited in *Holmes Group*. *See id.* at 16-17.  However, the timing itself is not dispositive.  The Court in *Holmes Group* emphasized that the plaintiff "did not misrepresent its intention to negotiate and then, suddenly, file a declaratory judgment suit to avoid an inconvenient forum . . . [i]t made no . . . implication that it would enter into negotiations." *Id.* at 16.  Here, Tarazi relied on Mr. Bukuras's representations that a response was forthcoming, but was instead ambushed with a lawsuit.

The parties have a history of negotiating their differences as, for example, when Mr. Bukuras signed the Guarantee to continuing doing business with Tazari after ORC folded and in October, 2011 when, after some discussion between Mr. Bukuras and Mr. Huleis, Tarazi agreed to sell FRMF 20,000 pounds of falafel mix after initially refusing to do so.  While Mr. Bukuras states that he felt negotiations would be fruitless, he did not tell this to Tarazi, and instead misrepresented that a response was forthcoming.  Given its long-term business relationship with the plaintiff, coupled with the manner in which that relationship had been conducted in the past, it was reasonable for Tarazi to rely on the plaintiff's representation and await a response from FRMF prior to

initiating any further action.

The situation at hand is more like that in *Davox Corp. v. Digital Systems International, Inc.* than *Holmes Group*. *See* 846 F.Supp. 144 (D. Mass., 1993). In *Davox*, the plaintiff's general counsel responded to letters that warned of potential patent infringement by promising that the defendant would get a response directly from the plaintiff's patent counsel. *Id.* at 146.  Over two weeks later, instead of responding, the plaintiff filed a lawsuit seeking a declaratory judgment that it had not infringed on the defendant's patent.  *Id.* One day later, the defendant filed its own suit in another district court. *Id.* at 147.  The Court ruled that special circumstances overcame the first-filed rule and granted the defendant's motion to transfer. *Id.* at 148-49 (refusing to exercise jurisdiction over declaratory judgment action and transferring the action to another district court).

Similarly here, in response to Tarazi's letter which alluded to potentially imminent litigation, Mr. Bukuras indicated that he would meet with his attorney regarding the letter and then "promised a response by the end of [the] week." (#15, Declaration of Alan M. Dettelbach, Ex. B, Feb. 15, 2012 Email; Ex. C, Mar. 5, 2012 Email)  Instead, two business days later, FRMF's attorney filed the complaint in this case. (#15, Declaration of Alan M. Dettelbach ¶¶ 3-

5) Unlike the parties in *Holmes Group*, FRMF and Tarazi were not on "equal footing" whereby they each took a position on liability. Rather, Tarazi, like the defendant in *Davox*, "responsibly deferred filing potentially protracted and expensive litigation and, indeed, was perhaps misled into believing it would not be prejudiced by doing so by [the plaintiff's] responses to its letters." *See Davox*, 846 F. Supp. at 148 (footnote omitted).

FRMF was put on notice that Tarazi was contemplating imminent litigation, and it misled Tarazi into waiting for a response from its attorney. It then filed a lawsuit seeking, *inter alia*, declaratory relief. Having considered all of the attendant circumstances, the Court finds that special circumstances rebut the priority given to the identical claims in the first-filed action. The Court will now examine the relevant convenience factors under § 1404 in order to determine if transfer is warranted.

## B. The Forum Selection Clause

The First Circuit has recognized that "[w]here the contract between the parties...contains a forum-selection clause, the clause will be a significant factor that figures centrally in the District Court's calculus [of whether to transfer under 28 U.S.C. § 1404(a)]." *Astro-Med*, 591 F.3d at 12-13 (internal quotation marks and citations omitted). Tarazi argues that it seeks to enforce a valid

forum-selection clause that requires "any dispute" arising under the Guarantee be heard in California. (#7 at 11-13)  The defendant's position is overly broad. Mr. Bukuras is a party to the Guarantee, not FRMF.  Since FRMF is not a party to the Guarantee, it is not bound by the forum-selection clause.

To determine the forum-selection clause's role in the pending action, the threshold issue the Court must confront is whether the clause is permissive or mandatory.  Since California law governs the Guarantee by virtue of its choice of law provision, California's treatment of forum-selection clauses must be examined.  California law distinguishes between permissive and mandatory clauses.  *See, e.g.*, *Animal Film, LLC v. D.E.J. Productions, Inc.*, 193 Cal. App. 4th 466, 471-72, 123 Cal. Rptr. 3d 72, 76-77 (2011).  Permissive clauses use words like "submit" and "consent" to indicate that the party accepts jurisdiction in a particular forum.  *Id.* at 471-72.  In contrast, mandatory clauses use language such as "shall have exclusive jurisdiction" and indicate that the party must litigate in the designated forum.  *Id.* at 472.

Here, the forum-selection clause reads, in relevant part:

> Guarantor hereby submits to the jurisdiction and venue of any federal court located in the State of California or any state court located in Los Angeles County, California, in connection with any action or proceeding brought for the enforcement of Guarantor'

[sic] obligations hereunder . . . .

Tarazi argues that the forum-selection clause is mandatory.  Focusing on the language "*any* action or proceeding," the defendant concludes this is a mandatory clause that the parties must litigate any action arising out of the Guarantee in California.  Tarazi's analysis ignores the pertinent language at the beginning of the clause, which states that "Guarantor hereby *submits* to jurisdiction ...", making the forum-selection clause permissive. (emphasis added).   In this case, Mr. Bukuras submitted to jurisdiction, thus consenting to the jurisdiction of the California courts as a defendant in certain claims.

The next issue is what claims the clause actually covers.  The Court will interpret the clause using ordinary contract principles absent evidence from the parties that California law demands a different analysis.  *See Huffington v. T.C. Group, LLC*, 637 F.3d 18, 21 (1 Cir., 2011).  By its terms, the clause applies to "any action or proceeding *brought for enforcement of Guarantor'[s] obligations* hereunder ...."  (emphasis added).  Contrary to Tarazi's assertions that the clause applies to "any action" surrounding the Guarantee, the qualifying language narrows the scope considerably.  *See id.* at 21-23 (contrasting a clause that stated "to enforce or for breach of" the contract with broader clauses using language such as "with respect to" or "arising out of" the contract

- 21 -

and classifying "to enforce" as narrow language).  This clause is thus binding

on Mr. Bukuras in actions brought for the purpose of enforcing his obligations

under the Guarantee.  Only one of the counts in Tarazi's complaint qualifies:

the third claim for breach of guarantee against Mr. Bukuras.  The other five

counts in Tarazi's complaint are not claims for enforcement of Mr. Bukuras'

obligations under the Guarantee and, therefore, the forum-selection clause is

inapplicable to them.

## C. Section 1404(a) Factors

The Court must examine a variety of factors in order to determine

whether to transfer FRMF's claims.[10]  "In addition to the convenience of parties

and witnesses, the factors to be considered by the court include the availability

of documents; the possibility of consolidation; and the order in which the

---

[10]

When deciding a motion to transfer, a leading treatise notes that:

> Courts frequently divide the factors they consider into private and public categories....Private factors include the statutory considerations of convenience of the parties and witnesses, but also include the plaintiff's
> Footnote 10 continued
> forum preference, where the claim arose, and the relative ease of access to sources of proof.  Public factors, which encompass the statutory consideration of the interest of justice, focus on judicial economy and often include the district court's familiarity with the governing law, the local interest in deciding local controversies at home, and the relative congestion of the courts.

15 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 3d* § 3847 (2007).

district court obtained jurisdiction." *Coady*, 223 F.3d at 11.  The Court also considers the interests of justice. *See id.*  Throughout its analysis, "the Court is mindful that the statute's purpose is 'to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *World Energy Alternatives*, 671 F. Supp.2d at 217 (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S. Ct. 805, 11 L. Ed 2d 945 (1964)).  The party seeking transfer bears the burden of showing that transfer is warranted under the circumstances. *Astro-Med*,  591 F.3d at 13; *World Energy Alternatives*, 671 F. Supp.2d at 217.  The Court shall consider the factors presented by  Tarazi.

### 1.   Convenience of the Parties and Witnesses

FRMF is located in Massachusetts and Tarazi is located in California.  In either venue, one party will be inconvenienced.  In this instance, "'transfer would merely shift the inconvenience from one party to the other.'" *See Gemini Investors Inc. v. Ameripark, Inc.*, 542 F. Supp.2d 119, 126 (D. Mass., 2008) (quoting *Princess House, Inc. v. Lindsey*, 136 F.R.D. 16, 18 (D. Mass., 1991)).  Such a shift does not weigh in favor of transfer. *See id.* (recognizing a pattern of judicial disfavor for such "inconvenience-shifting" in the District of Massachusetts).

- 23 -

The witnesses' convenience is "an extremely important, if not the most important, factor to be analyzed in determining whether to change a litigation's venue." *Id.* (citing *Brant Point Corp. v. Poetzsch*, 671 F. Supp. 2, 3 (D. Mass., 1987)(further citation omitted)).   When assessing the convenience of the witnesses, the "Court must consider the number of potential witnesses located in both the transferor and the transferee district, the nature and quality of their testimony, and whether the witnesses can be compelled to testify."   *Id.* (quoting *Princess House*, 136 F.R.D. at 18) (internal quotation marks omitted)).   In order to achieve a meaningful analysis, the "party seeking transfer . . . must, therefore, specify the key witnesses to be called, accompanied by a general statement as to what their testimony will entail." *Id.* (quoting *Princess House*, 136 F.R.D. at 18) (internal quotation marks omitted).

Tarazi initially asserts that aside from the parties, "the majority of relevant witnesses" are located in California. (#7 at 1)  The defendant then later contends that "*all* other witnesses are located in California."[11] (#7 at 8 (emphasis added))  What Tarazi does not do is detail who the witnesses are, describe the number of potential witnesses or explain the nature of their

---

[11] Although the defendant cites to ¶ 8 of Ms. Huleis' declaration in support of this contention, ¶ 8 does not specifically discuss witnesses, much less "all" of the witnesses. (#8 ¶ 8)

expected testimony.  It is apparent that both Ms. Huleis and Mr. Huleis are witnesses who reside in California and whose testimony will likely be crucial in the pending claims.  Tarazi asserts that California is where the falafel mix was manufactured and picked up and where the bags were manufactured; however it is unclear how witnesses in connection with the manufacturing process or bag production are likely relevant to FRMF's contract and chapter 93A claims.  (#7 at 8)

FRMF disputes Tarazi's assessment with respect to witnesses, asserting that Mr. Jalbert will be called as a witness to testify regarding whether FRMF assumed ORC's debt in its acquisition. (#12 at 12)  Further, according to FRMF, ORC's third-party food consultants and former employees residing in Massachusetts will be required to testify in order to defend Tarazi's claim that the plaintiff misappropriated trade secrets. (#12 at 12[12])  FRMF's contentions are somewhat misplaced. The claims before this Court on the motion to transfer are FRMF's claims against Tarazi, not those that Tarazi has asserted against FRMF in California.  The evidence relating to the misappropriation of trade secrets does not weigh in this analysis.  If anything, FRMF would need

---

[12]

Similarly, it is asserted that relevant documentation regarding FRMF's acquisition of ORC's intellectual property and development of the falafel recipe are in Massachusetts. (#12 at 12)

to send its witnesses and evidence to California to defend itself against Tarazi's claims in addition to having them testify in the Massachusetts claims if it chooses.

Based on the limited information provided by the parties, this Court cannot adequately determine the number of witnesses or the relative importance of their testimony. Therefore, this factor favors neither side in the analysis, since at a minimum, in either venue, it is apparent that witnesses will have to travel.

### 2. Availability of Documents

The location of documents is not a significant factor in the analysis when such documents are movable. *Gemini Investors*, 542 F. Supp.2d at 127. Modern technology enables relatively easy consolidation of physical documents into electronic form. *Id.* ("'[M]ost records and documents now can be transported easily or exist in miniaturized or electronic form.'")(quoting *Boateng v. Gen. Dynamics Corp.*, 460 F. Supp.2d 270, 276 (D. Mass., 2006)(further citation omitted)).

Tarazi argues that all documents relating to the falafel mix and the purchase of the bags are in California, as are documents relating to the debts of ORC, Mr. Bukuras, and FRMF. FRMF asserts that it has documents relating

to the acquisition of ORC in Massachusetts.  The claims will likely also require reference to correspondence and purchase orders between the parties.  Each side is in possession of documents that may be relevant.  *See Veryfine*, 124 F. Supp.2d at 26 (finding that in contract claim both parties had possession of relevant documentation and as such the alternative forum's relative convenience was "negligible").  This factor does not weigh in favor of either party.

### 3.  *Possibility of Consolidation*

The Court "can and should consider consolidation in its decision to transfer."  *Wiley v. Gerber Prods. Co.*, 667 F. Supp.2d 171, 173 (D. Mass., 2009).  Tarazi has asserted that if its transfer motion is granted, it will immediately move to consolidate all of the pending actions that involve the same underlying facts. (#7 at 9-10)  The possibility of consolidation weighs in favor of transfer, particularly since the Massachusetts forum is not presumptively favored.

### 4.  *Order in Which the Courts Obtained Jurisdiction*

The federal district court in California obtained jurisdiction on March 23, 2012 when Tarazi filed its complaint.  The defendant removed FRMF's action to the federal court on March 26, 2012 after it had been filed in state court on

March 5, 2012.  Tarazi takes the position that the federal district court in California obtained jurisdiction before this court.  (#7 at 10)

The defendant's contention, while literally true, is a bit disingenuous. "After the removal of an action from state court, the federal district court acquires full and exclusive subject-matter jurisdiction over the litigation.  The case will proceed *as if it originally had been brought in the federal court*."  14C Wright, Miller, Cooper & Steinman, *Federal Practice and Procedure: Jurisdiction 4th* § 3738 ( 2009) (emphasis added).  It follows that for purposes of order in which the courts obtained jurisdiction, the Massachusetts district court did so first.  Tarazi could have removed this case prior to filing suit in California. Were the Court to find otherwise, defendants could manipulate this factor in their favor by waiting to remove pending actions until after they had filed a separate action in another court.  They could thus claim that their federal district court of choice was the first to obtain jurisdiction. *Cf. Feinstein v. Brown*, 304 F. Supp.2d 279, 282-83 (D.R.I., 2004) (collecting cases and holding that for purposes of the first-to-file rule, the date on which the action was filed in state court controlled rather than the date on which the action was removed to federal court).

The District of Massachusetts obtained jurisdiction first.  However, in this

case, the Court ascribes very little weight to this factor given FRMF's conduct surrounding its filing.

### 5.  *Plaintiff's Choice of Forum*

Although a plaintiff's choice of forum is normally accorded great weight, FRMF's choice of forum deserves little weight in this analysis because of the special circumstances the Court has already identified.  *See Davox*, 846 F. Supp. at 146 ("[I]t would be contrary to important public policies discouraging needless litigation to reward [plaintiff's] race to the courthouse by giving preference to its choice of forum.").

### 6.  *Law to Be Applied*

Tarazi states that the "Guarantee unequivocally specifies that California law" applies. (#7 at 10)  That is true, but irrelevant to the claims at issue. FRMF is not a party to the Guarantee and, even it was, the claims in Massachusetts do not fall within the purview of the forum-selection clause, i.e., "any action or proceeding *brought for enforcement of Guarantor'[s] obligations* hereunder ...."  (emphasis added).   While FRMF's claims do not reference the Guarantee, it is premature to speculate what role, if any, the Guarantee will play in the plaintiff's claims.

In diversity cases it is preferable to adjudicate the lawsuit in a district

court that is "more familiar" with the applicable state law. *TransCanada*, 402 F. Supp.2d at 352 (citing, *inter alia*, *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947)(internal quotation marks omitted)).   A court sitting in diversity must apply the forum state's choice-of-law principles. *Auto Europe, LLC v. Connecticut Indem. Co.*, 321 F.3d 60, 64 (1 Cir., 2003).  Massachusetts courts look at three categories of considerations pursuant to its "'functional'" approach in determining "'which state has the more significant relationship to the transaction.'" *Jasty v. Wright Medical Technology, Inc.*, 528 F.3d 28, 40 (1 Cir., 2008) (quoting *Hendricks & Assocs., Inc. v. Daewoo Corp.*, 923 F.2d 209, 213 n.3 (1 Cir., 1991)).  The categories are: "(1) 'contacts,' (2) the Restatement § 6 (2) factors and (3) the 'Leflar factors[13].'" *Id.*

To determine the contacts that will inform the analysis, the Court looks to:

> (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

---

[13]

"The third category involves the 'Leflar factors.' *Bushkin [Associates, Inc. v. Raytheon Co.]*, [393 Mass. 622, 634,] 473 N.E.2d [662,] 670 n.7 [(1985)](quoting R.A. Leflar, *American Conflicts Law* 195 (3d ed.1977))." *Jasty*, 528 F.3d at 41 n.17.

*Id.* (citing *Buskin Associates, Inc. v. Raytheon Co.*, 393 Mass. 622, 632, 473 N.E. 2d 662, 669 (1985)(quoting Restatement (Second) of Conflict of Laws, § 188(1)(1971)(internal quotation marks omitted)).

The factors under Restatement § 6 are:

> '(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability, and uniformity of result, and (g) ease in the determination and application of the law to be applied.'

*Id.* at 41 (quoting Restatement (Second) Conflict of Laws, § 6(2)(1971) (internal quotation marks omitted)).

The performance of the contract occurred in California, the location of the falafel mix was in California, and the parties' businesses are located in Massachusetts and California.  It appears that the purchase orders were transmitted from Massachusetts to California, and at least in one instance on October, 2011, Mr. Bukuras flew to California to negotiate with the principals of Tarazi.  It is disputed whether Tarazi shipped the product to Massachusetts or if FRMF was responsible for picking up the shipments in California.  Apart from these considerations, the Court lacks information fully to address many of the Restatement factors.

Claims under chapter 93A are limited to instances where the alleged unlawful conduct took place "primary and substantially within the Commonwealth."  Mass. Gen. L. c. 93A, § 11.  Under a "center of gravity analysis," courts look at a number of factors to determine if the conduct forming the basis of a 93A claim satisfies this criteria.  *See Kuwaiti Danish Computer Co. v. Digital Equipment Corp.*, 438 Mass. 459, 473-474, 781 N.E.2d 787, 799 (2003).  Such an inquiry "necessarily will be fact intensive and unique to each case." *Id.*  The Court is not in a position at this stage to make the necessary factual determinations in order to decide whether Tarazi's conduct occurred primarily and substantially in Massachusetts. *See Workgroup Technology Corp. v. MGM Grand Hotel, LLC*, 246 F. Supp.2d 102, 118 (D. Mass., 2003)(declining to determine the question of "primarily and substantially" during the motion-to-dismiss stage). However, even if the Massachusetts-based chapter 93A claim is valid, a California judge is "as surely competent to understand the relevant statutes of Massachusetts as is a judge of the United States District Court for the District of Massachusetts to understand any relevant California statutes." *See Home Products International-North America, Inc. v. PeopleSoft USA, Inc.*, 201 F.R.D. 42, 49 (D. Mass., 2001).

- 32 -

The record is not sufficiently developed to say for certain what law will govern FRMF's claims, so this factor favors neither party.

### 7.  State or Public Interests at Stake

Where a "lawsuit is equally 'connected' to both [forums] through the nexus of one party to each state and there does not appear to be any public interest that applies in one state but not the other," this factor is neutral. *World Energy Alternatives*, 671 F. Supp.2d at 219 (citation omitted).

 Tarazi argues that the bulk of the claims involve harm to a California corporation: the falafel mix was manufactured and picked up in California, the bags were manufactured and used in California, fraud was committed upon a California company, and the alleged misappropriated trade secrets belonged to a California company. (# 7 at 11)  Again, Tarazi's arguments address the claims that it brought against FRMF in California.  The claims that are the subject of the motion to transfer are those FRMF filed in Massachusetts.

Under FRMF's declaratory judgment actions, California has an interest in ensuring debtors fulfill financial obligations to California businesses. Conversely, Massachusetts has an interest in ensuring its businesses are not held responsible for debts they do not owe.  In Count III of FRMF's complaint it is alleged that Tarazi committed unfair, deceptive acts and practices in

violation of 93A.   Massachusetts has a "'manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors.'" *TransCanada*, 402 F. Supp.2d at 353 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)(further internal quotation marks and citations omitted)).   By the same token, the viability of the chapter 93A claim is open to question given that is unclear whether the purportedly deceptive conduct occurred "primarily and substantially" within the Commonwealth.   *See Kuwaiti Danish Computer*, 438 Mass. at 473, 781 N.E.2d at 799 ("Section 11 [of chapter 93A] suggests an approach in which a judge should, after making findings of fact, and after considering those findings in the context of the entire § 11 claim, determine whether the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth.").

Considering all of the circumstances, this factor is neutral in the analysis.

### 8.  Interest of Justice

Many federal courts consider the interest of justice to be "decisive—outweighing the other statutory factors—in ruling on a change of venue motion even though the convenience of the parties and witnesses pointed in a different direction."   *15 Wright, Miller & Cooper, Federal Practice*

*and Procedure: Jurisdiction 3d* § 3854 (2007).  Under this category, the Court

considers "public-interest factors of systemic integrity and fairness...." *Saturn*

*Management LLC v. GEM-Atreus Advisors, LLC*, 754 F. Supp.2d 272, 283 (D.

Mass., 2010) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30

(1988) (further internal quotation marks omitted)).   An interest that is

> frequently . . . mentioned by the courts is the desire to
> avoid multiplicity of litigation as a result of a single
> transaction or event. Dictum from the Supreme Court
> suggests that great weight should be given to this
> efficiency consideration. Writing for the Court, Justice
> Black said: 'To permit a situation in which two cases
> involving precisely the same issues are simultaneously
> pending in different District Courts leads to the
> wastefulness of time, energy and money that §
> 1404(a) was designed to prevent.'"

*15 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 3d* §
3854 (2007 (quoting *Continental Grain Co. v. The FBL-585,* 364 U.S. 19, 26
(1960); *accord Mercado-Salinas v. Bart Enterprises Int'l, Ltd.*, 669 F. Supp.2d
176, 190 (D.P.R., 2009)("Judicial efficiency counsels against allowing
multiplicity of litigation in different districts arising from the same contract,
given the possibility of conflicting judgments and general concerns of undue
interference with another court's affairs." (citing *TPM Holdings, Inc. v. Intra-
Gold Industries, Inc.*, 91 F.3d 1, 4 (1 Cir., 1996) (*per curiam*) (stating that
courts "rely primarily on common sense and historical practice" to resolve
situations in which actions involving the same parties and subject matter are
simultaneously pending in different federal district courts)).

The California claims and Massachusetts claims "will involve common

discovery and witnesses" and therefore "should be heard in a single forum, to

conserve judicial resources and to promote an efficient resolution of all the related matters pending between the parties." *Davox*, 846 F. Supp. at 149; *see also Home Products*, 201 F.R.D. at 49 (recognizing that where the parties were involved in California litigation, both parties would "already be devoting their resources and witnesses to litigation in California" as a factor favoring transfer to California); *National Union*, 2011 WL 6148656, at *12 ("The prospect of having witnesses testify in two different proceedings would undermine the purpose of the transfer statute ....") (citing *Wiley*, 667 F. Supp.2d at 172).

While the forum-selection clause is not a separate factor favoring transfer, it indirectly bears on the analysis because it binds Mr. Bukuras to the California litigation.[14] "Although the terms of the clause arguably limit its applicability to [the Massachusetts claims], it would be an additional waste of judicial resources to divide this case further" by having some claims heard in California pursuant to the Guarantee "and keeping the other[s][]in this District." *See Wellons v. Numerica Savings Bank, FSB*, 749 F. Supp. 336, 338 (D. Mass., 1990)(granting motion to transfer where plaintiff was first to file, *inter alia*, breach of contract and 93A claims in Massachusetts and defendant then

---

[14]

FRMF neither contests the validity of the clause nor the fact that it binds Mr. Bukuras to defend the California claims in his individual capacity.  The sole issues FRMF raises is the applicability of the clause in the instant action and the fact that it does not bind FRMF as a defendant in California.

brought an action in New Hampshire citing a forum-selection clause in a promissory note).

FRMF's misleading conduct that constitutes the special circumstances implicates a very important public interest.  FRMF was on notice that Tarazi was planning to file suit and misled Tarazi into thinking that its attorney would respond to Tarazi's allegations.  It is reasonable to assume that FRMF was aware that Tarazi would file in California given (1)Tarazi's location; (2)  Mr. Bukuras's in-person interactions were in California; and (3) the designation of California under the Guarantee's choice of law and forum-selection clauses. Instead of providing the promised response, FRMF filed suit in its home forum. While even declaratory judgment actions are given first-filed priority, it is not in the interests of justice to grant such relief where one party has abused the process to gain an advantage over another.  "A system that permits a potential defendant to gain from anticipatory filing increases the burden on all districts as parties rush to file suit in their home districts rather than attempting to negotiate their differences." *Lexington Ins. Co. v. City of Phoenix, Ariz.*, 1996 WL 463672, at *2 (D. Mass., July 31, 1996) (noting that federal courts nationwide recognize the importance of discouraging anticipatory filing of declaratory judgment actions and collecting cases to that effect).

Finally, it is important to note a federal court's discretion in exercising jurisdiction over declaratory judgment actions. *See Lichoulas v. City of Lowell*, 555 F.3d 10, 13 & n.3 (1 Cir., 2009) (citing, *inter alia*, *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995) ("By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants.")).  If the Court may dismiss the declaratory judgment action, it follows that the Court is within its discretion to transfer the action. *See Subaru of New England, Inc. v. Subaru of Augusta, Inc.*, 121 F.R.D. 1, 3 (D. Mass., 1988); *see also Davox*, 846 F. Supp. at 148 ("This court will not exercise its discretionary jurisdiction over this action because it would be inappropriate to reward–and indeed abet–conduct which is inconsistent with the sound policy of promoting extrajudicial dispute resolution, and conservation of judicial resources.").

## *V. Conclusion and Recommendations*

FRMF's choice of forum is not presumptively favored, and the California action will involve the same witnesses, discovery, and underlying facts as the Massachusetts claims.  The pending Massachusetts and California claims should all be heard in a single forum, and after examining the factors under § 1404,

the interests of justice tip the balance in favor of transferring all of FRMF's claims to California.  I RECOMMEND that Defendant's Motion to Transfer (#6) be ALLOWED and that this action be TRANSFERRED to the United States District Court for the Central District of California, Eastern Division, at Riverside, California.

## VI. Review by the District Judge

The parties are hereby advised that any party who objects to these recommendations must file a specific written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the recommendations, or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review.  *See Keating v. Secretary of Health and Human Services*, 848 F.2d 271 (1 Cir., 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1 Cir., 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1 Cir., 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1 Cir., 1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d

603(1 Cir., 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).


/s/ Robert B. Collings

ROBERT B. COLLINGS
United States Magistrate Judge

September 28, 2012.